# EXHIBIT 16

Page 1

1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF TEXAS
2                        MARSHALL DIVISION
3       SIMPLEAIR INC.,                )
                                       )
4              Plaintiff,              )    CIVIL ACTION NO.
                                       )    2:14cv00679-JRG
5       v.                             )
                                       )
6       AMAZON.COM INC.,               )
                                       )
7         Defendant.                   )
        _____        )
8                                      )
9
10
11              VIDEOTAPED ORAL DEPOSITION OF
12                DAVID B. JOHNSON, PH.D.
13                   Houston, Texas
14              Wednesday, April 8, 2015
15
16
17
18
19
20
21
22      Reported by:
23      MICHAEL E. MILLER, FAPR, RDR, CRR
24      Notary Public
25      JOB NO. 92352

Page  2

1

2

3

4                        April 8, 2015

5                        8:54 a.m.

6

7          Videotaped Oral deposition of DAVID B.

8   JOHNSON, Ph.D., held at the Marriott Medical

9   Center, 6580 Fannin Street, Houston, Texas,

10  pursuant to the Federal Rules of Civil Procedure

11  before Michael E. Miller, Fellow of the Academy

12  of Professional Reporters, Registered Diplomate

13  Reporter, Certified Realtime Reporter and Notary

14  Public in and for the State of Texas.

15

16

17

18

19

20

21

22

23

24

25

Page 3

1   A P P E A R A N C E S:

2          DOVEL & LUNER
           BY:    JONAS JACOBSON, ESQUIRE
3          201 Santa Monica Boulevard
4          Santa Monica, California 90401
5          Counsel for Plaintiff
6

7          FENWICK & WEST
           BY:    SAINA SHAMILOV, ESQUIRE
8          801 California Street
9          Mountain View, California 94041
10         Counsel for Defendant
11

12         FENWICK & WEST
           BY:    DAVID SCHUMANN, ESQUIRE
13         555 California Street
14         San Francisco, California 94104
15         Counsel for Defendant
16

17  ALSO PRESENT:
18         Peter Jennings, Videographer
19

20                    --o0o--
21

22

23

24

25

1             THE VIDEOGRAPHER:  Will the court

2    reporter please swear in the witness.

3             DAVID B. JOHNSON, Ph.D.,

4              having been duly sworn,

5              testified as follows:

6                  EXAMINATION

7    BY MR. JACOBSON:

8        Q.  Please state your name.

9        A.  David B. Johnson.

10       Q.  You've been hired as an expert

11   witness by Amazon; is that correct?

12       A.  That's correct.

13       Q.  Are you here to testify about the

14   meaning of words in the patents involved in this

15   case?

16       A.  That's correct.

17       Q.  Let's discuss the term data as it is

18   used in the patent claims.

19       A.  All right.

20       Q.  Is it your opinion that the ordinary

21   meaning of data is information in any form on

22   which computer programs operate?

23       A.  Generally, yes.  But, I mean, I would

24   say that the meaning of data is well understood.

25   Data is data, data is bits, and computers operate

1    on data.  So, I mean, generally what you said is
2    correct, but I don't think anybody would have any
3    question about what data means.
4         Q.   Do you agree that data, as it is used
5    in the patent claims, can include message header
6    information?
7         MS. SHAMILOV:  Objection, form.
8         A.   Data can include any kind of bits.
9    Doesn't matter whether it's header or payload or
10   whatever.
11   BY MR. JACOBSON:
12        Q.   Can data include message header
13   information, as data is used in the patent
14   claims?
15        MS. SHAMILOV:  Objection, form.
16        A.   I tried to just answer that, but yes.
17   BY MR. JACOBSON:
18        Q.   Appreciate it.
19             Do you agree that as the term data is
20   used in the patent claims, data is not limited to
21   just the payload of a message?
22        MS. SHAMILOV:  Objection, form.
23        A.   Again, I think I just answered that,
24   but it's not limited to just payload.
25        MR. JACOBSON:  I'm holding a copy of

1   the '279 patent involved in this case.  Let's

2   mark this as Exhibit 1, please.

3                    (Johnson Deposition Exhibit 1

4   marked.)

5                    MS. SHAMILOV:  Wasted a lot of trees

6   not making it double-sided.

7                    MR. JACOBSON:  I hate double-sided.

8   BY MR. JACOBSON:

9           Q.  Dr. Johnson, take a look at claim 1,

10  which is in column 32.  Do you see where, in

11  line 49, the claim requires processing the

12  received data with at least one parser?

13          A.  Yes.

14                   MS. SHAMILOV:  Just for the record,

15  it says process, not processing.

16                   MR. JACOBSON:  Sure.

17          A.  Yes.

18  BY MR. JACOBSON:

19          Q.  Does this limitation require

20  processing the payload of a message?

21                   MS. SHAMILOV:  Objection, form.

22                   MR. JACOBSON:  Withdrawn.  Let me ask

23  that differently.

24  BY MR. JACOBSON:

25          Q.  Is it correct that this limitation

1   does not require processing specifically the

2   payload of a message?

3           MS. SHAMILOV:  Objection, form.

4        A.  It requires processing the data, and

5   we've already covered what data is, so the answer

6   would be:  It doesn't require processing of

7   payload.

8   BY MR. JACOBSON:

9        Q.  So if we had a parser that breaks up

10  or divides just a received message header, that

11  would satisfy this particular limitation?

12          MS. SHAMILOV:  Objection, form.  Just

13  for the record, the scope of this deposition is

14  his declaration and opinions expressed in the

15  declaration.

16          MR. JACOBSON:  Okay.  This is related

17  to that.  Let's keep going.  Just "Objection,

18  form," please.

19          MS. SHAMILOV:  Okay.

20          MR. JACOBSON:  Let me reask my

21  question.

22          THE WITNESS:  I'm sorry.

23  BY MR. JACOBSON:

24       Q.  We have a parser that breaks up or

25  divides just a received message header, that

1    would satisfy this particular limitation?

2              MS. SHAMILOV:  Objection, form.

3              THE WITNESS:  I'm sorry, could you

4    just ask the question one more time?

5              MR. JACOBSON:  I can.

6              THE WITNESS:  Yeah.

7    BY MR. JACOBSON:

8         Q.  If we had a parser that breaks up or

9    divides just a received message header, that

10   would satisfy this limitation, correct?

11             MS. SHAMILOV:  Objection, form.

12        A.  It would -- sometimes yes and

13   sometimes no.  I mean, it would depend on, for

14   example, where the data was -- where the message

15   header was received from.

16   BY MR. JACOBSON:

17        Q.  Well, let's just focus on the claim

18   language "process the received data with at least

19   one parser."  Do you see that?

20        A.  Okay.  I do, but received -- that

21   received data has an antecedent in the claim.

22        Q.  Okay.  Can you pay attention to just

23   the limitation, "process the received data with

24   at least one parser," and not the claim language

25   that comes before?

1      A.   I don't think I can, because this is

2  part of a claim and it has a clear antecedent in

3  the claim.

4      Q.   Is it your opinion that just this

5  claim language, "process the received data with

6  at least one parser," includes some requirement

7  about where the data is received from?

8      A.   The claim clearly says "central

9  broadcast server configured to receive data from

10  at least one information source and process the

11  received data," so the received data we're

12  talking about is the data that came from the

13  information source.

14      Q.   You're talking about other claim

15  language than the phrase I'm talking about,

16  correct?

17      A.   I'm talking about the meaning of that

18  limitation in the claim.  A single limitation in

19  the claim can't be interpreted standing all by

20  itself.  It has to be read in the context of the

21  claim it's a part of, certainly, and as well in

22  the context of the specification.

23      Q.   So what is your opinion on the

24  requirements to meet the limitation, "process the

25  received data with at least one parser"?

1      MS. SHAMILOV:  Objection, form.

2      A.   I don't quite understand what you're

3 trying to ask that you haven't already asked.

4 I'm sorry.

5 BY MR. JACOBSON:

6      Q.   Well, you were telling me that in

7 order to understand what it means to process the

8 received data with at least one parser, it's your

9 opinion that you need to look to other claim

10 language; is that accurate?

11      A.   What I'm trying to say is, you seem

12 to be asking the question sort of generically

13 about any header, and the claim language only

14 applies to the data received from the information

15 source.

16      Q.   Okay.  So let's try it this way.

17 Assume we have a header that is received from an

18 information source.

19      A.   Okay.

20      Q.   Now, to satisfy the limitation

21 "process the received data with at least one

22 parser," it's sufficient to break up or divide

23 just that header, correct?

24      MS. SHAMILOV:  Objection, form.

25      A.   You receive a message from an

1   information source, then process that received

2   data, then that processing could be just breaking

3   up or dividing -- I mean, doing what processing

4   means to that header of that received message.

5   BY MR. JACOBSON:

6        Q.   Let's discuss the term generating

7   data, as it is used in the patents.  Is it your

8   position that SimpleAir's construction is

9   incorrect because it reads limitations into the

10  claims?

11       A.   Could you provide me a copy of my

12  declaration?  And it would also be helpful if I

13  had the exact wording of SimpleAir's construction

14  in front of me.

15       Q.   Sure.

16       MR. JACOBSON:  Let's mark as

17  Exhibit 2 the declaration of Dr. Johnson on claim

18  construction.

19            (Johnson Deposition Exhibit 2

20  marked.)

21  BY MR. JACOBSON:

22       Q.   I believe you're looking for page 18.

23       A.   Thank you.

24       Q.   Page 17.

25       MS. SHAMILOV:  Jonas, do you have the

1        A.   Okay.

2        Q.   What is the general ordinary meaning

3   of software subsystem?

4             MS. SHAMILOV:  Objection, form.

5        A.   In what context?

6   BY MR. JACOBSON:

7        Q.   What would software subsystem mean to

8   one skilled in the art, setting aside the

9   patents?

10            MS. SHAMILOV:  Objection, form.

11       A.   So someone -- I'm trying to

12   understand the context of the question.  You're

13   asking about someone who's skilled in the art of

14   networking or, you know, sort of generally the

15   field of the patents, but perhaps someone who's

16   never seen these patents?

17   BY MR. JACOBSON:

18       Q.   Yes.

19       A.   Just someone who you ask them what is

20   a software subsystem.

21       Q.   Let me ask it this way:  In the field

22   of computer science or networking, what is the

23   ordinary meaning of software subsystem?

24       A.   A piece of software.  It sort of has

25   no real clear meaning.  For example, subsystem in

1   that context really adds no meaning beyond

2   software.

3         Q.   Is it your opinion that a software

4   subsystem is identical to software?

5              MS. SHAMILOV:   Objection, form.

6         A.   Broadly yes, you could say software

7   subsystem is somehow, but in a very vague,

8   ill-defined way, somehow sort of trying to --

9   software -- let me think how to say this.

10             Imagine some program.   That program

11   consists of many lines of source code.   Software

12   is -- line 1 of that source code, that's

13   software.   Line 2 is software.   Lines 5 through

14   7, that's software.   The whole program, that's

15   software.

16             If you said a software subsystem, you

17   might mean the entire program as opposed to some

18   arbitrary piece of the program.

19   BY MR. JACOBSON:

20         Q.   How would the entire program be a

21   subsystem?

22             MS. SHAMILOV:   Objection, form.

23         A.   Subsystem is trying to identify some

24   defined -- but not in any clear way, but some

25   kind of a unit of the software that's not sort of

1    an arbitrary little snippet.  So like line 1 of

2    the source code, that's not a software subsystem.

3              Software subsystem is a unit that's

4    not -- I mean, that sort of stands on its own in

5    some sense.  I mean, system versus subsystem,

6    subsystem would mean that this is part of a

7    larger whole.

8    BY MR. JACOBSON:

9         Q.   Okay.  So one thing software

10   subsystem would tell a person of ordinary skill

11   is that you have some software that's part of a

12   larger whole?

13             MS. SHAMILOV:  Objection, form.

14        A.   Part of a larger whole of more

15   software.

16   BY MR. JACOBSON:

17        Q.   A second thing software subsystem

18   would tell a person of ordinary skill is that the

19   software is a unit that stands on its own in some

20   sense?

21             MS. SHAMILOV:  Objection, form.

22        A.   It would not tell one of ordinary

23   skill that it's a unit that stands on its own.

24   It sort of suggests that.  I mean, it has a

25   slight suggestion that when I say software

Page 121

1    subsystem as I'm talking to a technical colleague

2    outside of the field of these patents, if I say a

3    software subsystem, I probably -- or suppose you

4    said software subsystem, I would probably guess

5    that you didn't mean some arbitrary, you know,

6    snippet that you just sort of pulled out of the

7    program with no thought to, you know, like -- as

8    I said, line 1 versus line 2 or 5 through 7,

9    that's an arbitrary snippet.

10            So I would think you probably didn't

11   mean an arbitrary snippet of the code, but I

12   wouldn't know which snippet you meant and how

13   arbitrary it could be and still meet what you're

14   trying to say is a software subsystem.

15            But clearly, software subsystem is

16   trying to say something beyond just software, and

17   one aspect of it, as I said, is that it's a piece

18   of a larger whole or larger piece of software, a

19   larger, you know, collection of software.

20            But it sort of has this connotation

21   that it's not only a piece of the larger whole,

22   but it's a -- I don't know, a meaningful piece as

23   opposed to an arbitrary piece.

24   BY MR. JACOBSON:

25            Q.  Let's now discuss software subsystems

Page  234

1                   C E R T I F I C A T E

2

3               I, MICHAEL E. MILLER, FAPR, RDR, CRR,

4     Notary Public in and for the State of Texas, do

5     hereby certify:

6                That DAVID B. JOHNSON, Ph.D., the

7     witness whose deposition is hereinbefore set

8     forth, was duly sworn by me and that such

9     deposition is a true record of the testimony

10    given by such witness;

11                That pursuant to FRCP Rule 30,

12    signature of the witness was not requested by the

13    witness or other party before the conclusion of

14    the deposition;

15                I further certify that I am not

16    related to any of the parties to this action by

17    blood or marriage; and that I am in no way

18    interested in the outcome of this matter.

19                IN WITNESS WHEREOF, I have hereunto

20    set my hand this April 8, 2015.

21

22

23        _____

24        MICHAEL E. MILLER, FAPR, RDR, CRR

25